1  MANDOUR & ASSOCIATES, APC
2  JOSEPH A. MANDOUR, III (SBN 188896)
   BEN T. LILA (SBN 246808)
3  16870 West Bernardo Drive, Suite 400
4  San Diego, CA 92127
   Telephone:  (858) 487-9300
5  Facsimile: (858) 487-9390
6  Email: jmandour@mandourlaw.com
   Attorneys for Plaintiff,
7  DASALLA TRADING COMPANY
8

9
            **UNITED STATES DISTRICT COURT**
10
11          **CENTRAL DISTRICT OF CALIFORNIA**

12  _____
                                        )
13                                      )  **Civil Case No.  2:14-cv-09939**
14  DASALLA TRADING COMPANY,            )
    a California Corporation,           )  **COMPLAINT FOR APPEAL AND**
15                                      )  ***DE NOVO* REVIEW OF TTAB**
16                                      )  **DECISION PURSUANT TO 15**
          Plaintiff,                    )  **U.S.C. § 1071(b)**
17                                      )
              v.                        )
18                                      )
19  CUTLERY AND MORE, LLC, a            )
    Illinois Limited Liability Company, )
20                                      )
21        Defendant.                    )
22                                      )
                                        )
23                                      )
                                        )
24  _____    )

25       Plaintiff DASALLA TRADING COMPANY ("plaintiff"), by and through
26  its counsel, alleges against defendant CUTLERY AND MORE, LLC
27  ("defendant") as follows:
28

## NATURE OF THE ACTION

1.     This is an action for appeal and review of a United States Patent & Trademark Office (USPTO) Trademark Trial and Appeal Board (TTAB) final decision under the Lanham Act (15 U.S.C. § 1051, *et seq.*), pursuant to 15 U.S.C. §1071(b).

## THE PARTIES

2.     Plaintiff DASALLA TRADING COMPANY is California corporation with a principle place of business in Burbank, California.

3.     On information and belief, defendant CUTLERY AND MORE, LLC is or purports to be an Illinois limited liability company having a principle place of business at 135 Prairie Lake Road, East Dundee, Illinois 60118.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1338 because the action arises under the trademark laws of the United States and 15 U.S.C. §1071(b) and 15 U.S.C. §1121, and pendant jurisdiction of any and all state causes of action under 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction because, on information and belief, the defendant systematically and continuously directs business activities toward and into the Central District of California.  For example, attached hereto as Exhibit A is a review from defendant's customer who resides in the district.

6.     Venue is proper and reasonable in this district under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to this occurred in this district.

## FACTS

7.     On or about October 19, 2010, plaintiff filed Trademark Application Serial No. 85/156,141 for the trademark CUTLERYANDBEYOND.

8.     Plaintiff's trademark application was approved by the USPTO and published for Opposition on March 22, 2011.

9.     On September 19, 2011, defendant filed a Notice of Opposition with respect to plaintiff's application as TTAB Opposition No. 91201666 based on its trademarks CUTLERYANDMORE.COM and CUTLERYANDMORE and CUTLERYAND.

10.     After a trial and briefing proceeding before the TTAB, the Board rendered a decision on October 31, 2014 finding a likelihood of confusion between the parties' marks and sustaining the defendant's opposition to plaintiff's trademark application.  Attached hereto as Exhibit B is a true and correct copy of the Board's decision.  Plaintiff believe the decision to be erroneous and hereby appeals.

11.     Plaintiff alleges that the TTAB erroneously admitted hearsay evidence regarding likelihood of confusion, particularly the alleged evidence of actual confusion.  Moreover, plaintiff alleges that the TTAB lacked additional evidence with respect to plaintiff's use of the trademark and the strength of plaintiff's trademark which would be discoverable in the present action.

12.     Plaintiff further alleges that the TTAB erroneously failed to consider evidence of equitable defenses such as laches with respect to plaintiff's trademark.

13.     Plaintiff seeks *de novo* review of the TTAB decision under Section 21 of the Lanham Act, 15 U.S.C. §1071.

## CLAIMS FOR RELIEF
### First Claim for Relief
### (Request for *De Novo* Review and Reversal of TTAB Decision Pursuant to 15 U.S.C. § 1071(b))

14.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 to 13 of the complaint as though fully set forth herein.

15.     As the TTAB has issued a Final Decision sustaining defendant's opposition to plaintiff's trademark application, plaintiff respectfully requests *de*

*novo* judicial review and reversal of the decision under the Administrative Procedures Act and the Lanham Act and 15 U.S.C. §1071(b).

16.    Plaintiff's CUTLERTYANDMORE trademark is not confusingly similar to defendant's CUTLERYANDBEYOND trademark and is not likely to cause confusion, mistake and/or deception as to the source and/or origin of the parties' goods and/or services.

17.    Denial of plaintiff's trademark application by the USPTO, as ordered by the TTAB, will irreparably damage plaintiff.

18.    Plaintiff has no other remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff asks that this Court grant judgment against defendant for the following:

A.    The TTAB final decision should be reversed and vacated and an order should be entered directing the USPTO to reverse its decision and deny defendant's trademark opposition against registration of plaintiff's federal trademark application;

B.    The Court should issue an Order to the Director of the USPTO to approve registration of U.S. Trademark Serial No. 85/156,141;

C.    Plaintiff be awarded his reasonable attorneys' fees for prosecuting this action; and,

D.    Plaintiff receive all other relief the Court deems appropriate.

\\
\\
\\
\\
\\
\\

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by the jury on its claims herein and all issues and claims so triable in this action.

Respectfully submitted,

Dated: <u>December 30, 2014</u>      **MANDOUR & ASSOCIATES, APC**


<u>      /s/ Ben T. Lila      </u>
Ben T. Lila (SBN 246808)
blila@mandourlaw.com
Attorneys for plaintiff,
DASALLA TRADING COMPANY

**EXHIBIT A**

EXHIBIT A



**EXHIBIT B**

EXHIBIT B

THIS OPINION IS NOT A
PRECEDENT OF THE TTAB

Mailed:
October 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Cutlery and More, LLC*
*v.*
*Dasalla Trading Company[1]*
_____

Opposition No. 91201666
_____

Charles C. Valauskas and Allison M. Corder of Valauskas Corder LLC for Cutlery and More, LLC.

Matthew H. Swyers of The Trademark Company, PLLC for Dasalla Trading Company.

_____

Before Quinn, Bergsman and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

Dasalla Trading Company ("Applicant") filed an application to register the mark CUTLERYANDBEYOND in standard characters for "Retail store and on-line retail store services featuring cutlery and kitchenware," in International Class 35.[2]

---

[1] Applicant is identified in the application as "Desalla Trading Company." This is a misspelling of Applicant's actual name, which appears in correct form in the caption of this decision.

[2] Application Serial No. 85156141, filed on October 19, 2010 under Trademark Act § 1(a), 15 U.S.C. § 1051(a), stating August 2000 as the date of first use anywhere and first use in commerce.

Opposition No. 91201666

Cutlery and More, LLC ("Opposer") opposed registration of the mark on the ground that the mark, as used in connection with the identified services, so resembles Opposer's earlier used marks CUTLERYANDMORE.COM and CUTLERYANDMORE and Opposer's registered mark shown below as to be likely to cause confusion, mistake or deception, under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).



Opposer pleaded ownership of Registration No. 3954102 for the mark shown above for "On-line retail store services featuring cutlery, cookware, kitchen items and accessories thereof," in International Class 35.[3] Color is not claimed as a feature of the registered mark.[4] Applicant, in its answer, denied the salient allegations of the notice of opposition. The case has been fully briefed.

## I.    <u>The record.</u>

The record includes the pleadings and, by operation of Trademark Rule 2.122, 37 C.F.R. § 2.122, the application file for the opposed mark. Opposer's

---

[3] Reg. No. 3954102 issued May 3, 2011.

[4] Applicant also pleaded ownership of two pending applications, Serial No. 85345038 for the mark CUTLERYANDMORE (in standard characters) and Serial No. 85345016 for the mark CUTLERYAND (in standard characters). Both applications were filed on June 13, 2011 and prosecution of both has been suspended to await the final disposition of the application that is the subject of this proceeding.

Opposition No. 91201666

pleaded registration was made of record under a notice of reliance, in the form of a current printout of information from the electronic database records of the USPTO showing current status and title of the registration.[5]  The record also includes the following testimony and evidence:

**A.    Opposer's evidence.**

1.    Testimony deposition of Michael Beltrami, Opposer's owner, dated December 19, 2013 (with exhibits). 17 TTABVUE 2-58.

2.    Testimony deposition of Kristen Kohuch, Opposer's customer service manager, dated December 19, 2013 (with exhibits). 17 TTABVUE 59-94.

3.    Notice of reliance (16 TTABVUE 1-70) on the following evidence:

-    Information regarding various pending applications of Opposer.

-    WHOIS data for the domain <cutleryandmore.com>.

-    Web pages of Opposer from <web.archive.org>.

-    Web pages from <cutleryandmore.com>.

-    Web pages from <cutleryandbeyond.com>.

-    Applicant's admissions in response to certain requests for admission.

-    Applicant's responses to interrogatories of Opposer.

-    Definitions of the words "more" and "beyond."

**B.    Applicant's evidence.**

1.    Testimony deposition of Eddie Valdez Dasalla, Applicant's founder, dated February 10, 2014 (with exhibits). 23 TTABVUE 1-35.

2.    Notice of reliance (18 TTABVUE 1-48) on the following evidence:

---

[5] 16 TTABVUE 6-9. Citations to the record will be to TTABVUE, the docket history system for the Trademark Trial and Appeal Board.

Opposition No. 91201666

- Opposer's responses to interrogatories of Applicant.

- Third-party registrations of marks that include the designation CUTLERY.

## II.   <u>Standing</u>.

Opposer has properly made of record its pleaded registration and has presented testimony regarding its use of the service mark CUTLERY AND MORE and the web address <cutleryandmore.com> in connection with retail services.[6] Opposer has thus shown that it is not a mere intermeddler and has established its standing to oppose registration of Applicant's mark. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000); *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023 (Fed. Cir. 1999); and *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (CCPA 1982).

## III.   <u>Opposer's claim under Section 2(d)</u>.

Opposer brings its opposition under Trademark Act § 2(d) on the ground of priority and likelihood of confusion. In view of Opposer's ownership of a valid and subsisting registration of its pleaded mark, priority is not in issue with respect to the mark and the services identified in the registration. *King Candy, Inc. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).[7]

Our determination of likelihood of confusion is based on an analysis of all probative facts in evidence that are relevant to the factors set forth in *In re E. I. du*

---

[6] Beltrami 4:6-24; 6:20-7:2; 25:2-3, 17 TTABVUE 7; 9-10; and 28.

[7] For purposes of this decision, we need not address Opposer's claim of priority with respect to its common law rights in the pleaded mark CUTLERY AND MORE.

4

Opposition No. 91201666

*Pont de Nemours & Co.* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also In re*

*Majestic Distilling Co., Inc.,* 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003).

A.    **The parties' services.**

Turning first to the similarity or dissimilarity of the services at issue, we find

that they are essentially identical. Both the application and the Opposer's pleaded

registration identify "online retail store services featuring cutlery."  The application

also indicates that "kitchenware" is offered through Applicant's online retail service.

We see little difference between this category of product and the "kitchen items" and

"cookware" that are listed in the registration as goods offered through Opposer's

online retail services.

In the context of an opposition proceeding, the question of registrability of an

applicant's mark must be decided on the basis of the identifications of goods and

services set forth in the application and registration at issue. *See Octocom Syst. Inc.*

*v. Houston Computers Svcs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir.

1990); *Kalart Co., Inc. v. Camera-Mart, Inc.*, 119 USPQ 139 (CCPA 1958); *In re*

*Elbaum*, 211 USPQ 639, 640 (TTAB 1981). Accordingly, the *du Pont* factor

regarding the similarity or dissimilarity of the services weighs heavily in favor of a

finding of likelihood of confusion.[8]

B.    **Channels of trade.**

We next consider the parties' established and likely to continue channels of

trade. Because the parties' services are identical, we must presume that they move

---

[8] We note, moreover, that Applicant has admitted that the parties' services are identical.
(Applicant's brief at 1, 24 TTABVUE 7).

Opposition No. 91201666

through the same channels of trade[9] and are sold to the same classes of purchasers. *See In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *American Lebanese Syrian Associated Charities Inc. v. Child Health Research Institute,* 101 USPQ2d 1022, 1028 (TTAB 2011); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994). As there are no limitations as to channels of trade in the identifications of services in the registration and application, we presume that the parties' services move in all channels of trade that are normal for such services. *See Octocom,* 16 USPQ2d at 1787; *Paula Payne Products Co. v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ 76 (CCPA 1973); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992). The parties' testimony shows that such channels include the parties' own internet websites; advertising on retail websites of others, such as Amazon.com; placement of orders over the telephone; key word advertising on search engines; print advertising; email advertisements; fliers; and catalogues.[10]   As the parties actually share, or are presumed to share, these channels, the *du Pont* factor of trade channels weighs heavily in favor of a finding of likelihood of confusion.[11]

---

[9] Moreover, Applicant has admitted that the "channels of trade and marketing" of the parties' services are identical. (Applicant's brief at 1, 24 TTABVUE 7).

[10] Beltrami 4:10-5:7, 17 TTABVUE 7-8; Dasalla 19:3-13; 26:15-27:14; 23 TTABVUE 22, 29.

[11] We note Applicant's comment that Opposer began to advertise its services on Amazon.com only after it learned, during this proceeding, that Applicant was availing itself of this trade channel. (Applicant's brief at 7, 24 TTABVUE 13). Of course, there is no reason why Opposer should consider itself foreclosed from offering its services on Amazon.com, as it is a normal and highly suitable trade channel for purveyors of consumer goods. The convergence of Applicant and Opposer in the trade channel of Amazon.com is a perfect illustration of the validity of our presumption that identical services will move through identical trade channels.

Opposition No. 91201666

## C.   <u>**The marks at issue**</u>.

We next consider the similarity or dissimilarity of the marks at issue in terms of appearance, sound, meaning, and overall commercial impression. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin,* 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). In doing so, we bear in mind that "The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012). The proper focus is on the recollection of the average customer, who retains a general rather than specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB 1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975). In comparing the marks, we are mindful that "[w]hen marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007). We base our determination on a consideration of the marks in their entireties. However, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate

7

Opposition No. 91201666

conclusion rests on a consideration of the marks in their entireties. *In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

Initially, we note that Opposer's mark is registered in special form and includes stylized lettering and a design element that are not present in Applicant's mark. Generally, the specific style of a registered mark cannot serve to distinguish an applicant's mark that is in standard character form. *In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012), *citing In re Mighty Leaf Tea,* 601 F.3d 1342, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010). In the case of marks consisting of words and a design, the words are normally given greater weight because they would be used by consumers to request the goods or services. *Sweats Fashions Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 4 USPQ2d 1793, 1798 (Fed. Cir. 1987); *Giant Food, Inc. v. Nation's Food Service, Inc.,* 710 F.2d 1565, 218 USPQ 390 (Fed. Cir. 1983); *In re Dakin's Miniatures, Inc.,* 59 USPQ2d 1593, 1596 (TTAB 1999). In any event, neither the stylization of the lettering in Opposer's mark nor the line design that underscores the words ANDMORE is particularly distinctive.

In appearance, both marks are relatively long strings of letters (16 in the case of Applicant's mark and 17 in the case of Registrant's mark) presented as a unit. Both marks begin with the letter string CUTLERYAND; the two marks differ in their remaining letters, -BEYOND and -MORE.COM, respectively. However, we note that it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered. *Palm Bay Imports Inc.,* 73 USPQ2d at 1692 ("Veuve" is the most prominent part of the mark VEUVE CLICQUOT

8

Opposition No. 91201666

because "veuve" is the first word in the mark and the first word to appear on the label); *Century 21*, 23 USPQ2d at 1700 (upon encountering the marks, consumers will first notice the identical lead word). In this case, the lettering that would be most capable of distinguishing the marks is visually less salient because it begins in the middle of the string of letters that constitutes each mark.

In meaning, the two marks are quite similar. Although each is presented as a single "word," customers would readily perceive that they are, in fact, composed of several common words, "cutlery and beyond" in the case of Applicant, and "cutlery and more," combined with the web address indicator ".com" in the case of Opposer. The meanings of these component elements, which are all extremely common words known to the general public, would be readily apprehended by customers. We give very little distinctive weight to the designation ".com" in Opposer's mark, because it is a standard indicator of an online address, and both parties conduct their retail sales online. *See In re Oppedahl & Larson LP*, 373 F.3d 1171, 71 USPQ2d 1370 (Fed. Cir. 2004). Of course, the words "beyond" and "more" are not the same, so we must consider their respective meanings.

Opposer has made of record dictionary definitions for the purpose of showing that "beyond" and "more" have similar meanings. It is clear that both words are subtle in meaning. However, notably, one definition states that "Beyond also means more than: *I've got nothing to tell you beyond what I said earlier*."[12]  This definition suggests that "beyond" and "more" are nearly identical in meaning.

---

[12]  Definition of "beyond" from CAMBRIDGE ACADEMIC CONTENT DICTIONARY at <dictionary.cambridge.org>, Opposer's notice of reliance, 16 TTABVUE 70.

9

Opposition No. 91201666

Opposer has also submitted a definition of "beyond" stating that the word means "To a degree or amount greater than" and "In addition to"; and a definition of "more" from the same dictionary stating that the word means "Greater in size, amount, extent, or degree" and "additional."[13]  These definitions, too, suggest that the two words are quite close in meaning.[14]  Overall, we conclude that in meaning the two marks are similar but not identical.

In terms of sound, we note both similarities and differences between the marks. They sound alike to the extent of their initial syllables, CUTLERYAND-; and they differ phonetically as to their final syllables, -BEYOND and –MORE.COM. We also note these final syllables are different in number (two *versus* three) and rhythm in the way that they would be pronounced.

Applicant argues that, in considering the similarity or dissimilarity of the marks, we should treat the words MORE and BEYOND, respectively, as the dominant portions of the marks. Applicant argues that "additions or deletions to marks are [ ] sufficient to avoid a likelihood of confusion when … the matter common to the marks is not likely to be perceived as distinguishing source because it is merely descriptive or diluted,"[15] *citing Citigroup Inc. v. Capital City Bank Group, Inc*., 637 F.3d 1344, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011). Applicant

---

[13] Definitions of "beyond" and "more" from WEBSTER'S II NEW COLLEGE DICTIONARY (1999), pp. 106 and 712, 16 TTABVUE 68 and 67.

[14] Applicant, in its brief, appears to admit that there is a similarity in meaning between "more" and "beyond," stating that MORE is "suggestive of additional items that may be provided," and that "BEYOND is suggestive of additional services that are provided…." Applicant's brief at 13, 24 TTABVUE 19.

[15] Applicant's brief at 13, 24 TTABVUE 19.

Opposition No. 91201666

refers to the components –MORE and –BEYOND as "the only two terms that are inherently distinctive in the respective marks."[16] We agree that the word CUTLERY is very highly descriptive – and probably generic – with respect to the services of the two parties and would not, alone, be perceived as a source indicator. On the other hand, neither MORE nor BEYOND is a particularly distinctive term; as positioned in the respective marks, these words are not visually salient; and in meaning they project a much vaguer impression than the word CUTLERY. At most, one can say that they are distinctive in sound. In view of the "run-on" nature of the two marks before us, we see little reason to designate any component of the marks as a "dominant" component or to give special weight to the words MORE and BEYOND.

Considering the overall commercial impressions that arise from the appearance, sound and meaning of the two marks, we find that the similarities outweigh the differences and, accordingly, we find that the *du Pont* factor of the similarity or dissimilarity of the marks weighs in favor of a finding of likelihood of confusion.

**D.    Third-party registrations.**

Applicant has made of record copies of 25 third-party registrations of marks that include the term CUTLERY.[17]  Applicant's purpose is

---

[16] *Id.*

[17] Applicant's notice of reliance, 18 TTABVUE 24-48. Opposer has objected to the admission of this evidence (Opposer's brief at 2, 21 TTABVUE 7) on the ground that it "is not evidence of what happens in the marketplace." Opposer's objection goes not to the admissibility of the evidence, but to the weight that the Board should assign to it. The objection is overruled.

Opposition No. 91201666

> to establish that the term CUTLERY is so widely used in
> the parties' industry that the public will look to other
> elements beyond the term CUTLERY to distinguish the
> source of the goods or services, namely the dominant
> terms MORE and BEYOND. …
>
> If the public can so distinguish as between marks
> containing the merely descriptive term CUTLERY in
> conjunction with other merely descriptive or merely
> geographically descriptive terms such as CHICAGO, PRO,
> COLORADO, NEW ENGLAND, KENNESAW, LAGUNA,
> and SHEPHERD HILLS, then certainly these
> registrations must be relevant to establish that the public
> will also do so as between two terms, MORE and
> BEYOND, that are, themselves, inherently distinctive
> and the dominant portions of the service marks at issue.[18]

First, we must point out that third-party registrations cannot, alone, demonstrate that a term "is so widely used in the parties' industry" because they are not evidence of actual use at all. Moreover, such registrations "provide no basis for saying that the marks so registered have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion." *Smith Bros. Mfg. Co. v. Stone Mfg. Co.*, 476 F.2d 1004, 177 USPQ 462, 463 (CCPA 1973); *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 (TTAB 2011). We cannot interpret this evidence as establishing that "the public can distinguish as between [such] marks," because the issuance of a registration by the USPTO gives us no insight into the minds of actual customers in the marketplace. In sum, this evidence gives us no basis upon which to consider the *du Pont* factor of "the number and nature of similar marks *in use* on similar [services]." 177 USPQ at 567 (emphasis added).

---

[18] Applicant's brief at 17-18, 24 TTABVUE 23-24.

12

Opposition No. 91201666

The registrations do serve to confirm the significance of the term CUTLERY in the field of cutting implements and the service of retailing such implements; and we have given due consideration to this descriptive or generic significance in our analysis. Beyond this, they have little relevance to the question of whether the marks of Applicant and Opposer can be distinguished. The third-party marks do not share the structure that is common to the marks of Applicant and Opposer. Moreover, although they all include the word CUTLERY, the additional wording in each mark has meaning that is distinct from the meaning of the additional wording of the other marks. As we have discussed above, the additional wording in the marks of Applicant and Opposer results in marks that are similar in meaning.

E.    **<u>Actual confusion</u>**.

Opposer has submitted testimony and documentary evidence (primarily in the form of copies of e-mails and transcripts of telephone calls) to demonstrate several instances of alleged actual confusion of source as to the services of Applicant and Opposer. Applicant has objected to the admission of such evidence on grounds that it is inadmissible hearsay.[19] On a substantive level, Applicant has also criticized the reliability of such evidence and disputed Opposer's interpretation of it.

The specific documents and materials at issue were initially offered as records kept in the course of a regularly conducted business activity, within the hearsay exception of Fed. R. Evid. 803(6). In response to Applicant's objection that those materials contained a second level of hearsay (*i.e.*, statements of customers

---

[19] Applicant's brief at 2-5, 24 TTABVUE 8-11.

Opposition No. 91201666

offered for the truth of the matter asserted therein), Opposer argues that those statements are admissible as "present sense impressions of the declarants" and that they "fall under Fed. R. Evid. 803(3) 'state of mind' exception to the hearsay rule."[20] We have reviewed Opposer's evidence of confusion with a critical eye as to its evidentiary value. Most of what Applicant characterizes as hearsay is, in fact, not offered for the truth of the matter asserted and, as such, is not subject to the rule excluding hearsay. Fed. R. Evid. 801(c). In any event, we note that evidence of the type offered by Opposer has been accepted by the Board and the courts under the "state of mind" exception, even when offered for the truth of an out-of-court declarant's assertion. *Armco Inc. v. Armco Burglar Alarm Co., Inc.*, 217 USPQ 145, 149, fn.10 (5th Cir. 1982); *Fun-Damental Too Ltd. v. Gemmy Industries Corp.*, 42 USPQ2d 1348, 1356 (2d Cir. 1997); *National Rural Electric Cooperative Ass'n v. Suzlon Wind Energy Corp.*, 78 USPQ2d 1881, 1887 (TTAB 2006).

We give consideration to the following evidence:

(1)     In an email exchange of January 29-31, 2012 between Michael Martin and Opposer's customer service personnel,[21] Mr. Martin described an order he had placed with Amazon for a product that "will ship from you [Opposer.]" When Opposer's personnel asked him for a copy of the order, he sent, as an attachment to another email, an order record stating "Sold by: CutleryAndBeyond."

(2)     The following exchange of three e-mails[22] transpired in October 2012 between an Amazon customer and Opposer's owner:

---

[20] Opposer's reply brief at 12, fn.4, 21 TTABVUE 18.

[21] Kohuch Dep., Ex. 9, 17 TTABVUE 87-89.

[22] Beltrami Dep. Ex. 3, 17 TTABVUE 48-49.

Opposition No. 91201666

> CUSTOMER: I received my order just fine. This may be a stupid question but do you have directions on the correct way to use the sharpener?
>
> Also, I found it strange that there was no packing slip in the box. ...
>
> OPPOSER'S OWNER: I might be able to help you with locating directions for the sharpener, but what sharpener are you referring to?
>
> Did you purchase the item from us, Cutlery and More? We always include packing slip in our packages.
>
> CUSTOMER: Maybe not. I bought it from CutleryandBeyond. I see that my email went to CutleryandMore. I'm sorry for bothering you. I will try again.

(3)    In a 2011 email exchange,[23] a customer sent an inquiry to Opposer's customer service personnel regarding an order. When Opposer's personnel requested information from the customer's credit card statement, he replied, via email:

> 11/14/2011  Pending  DASALLA TRADING CO. $279.85
>
> Please see above for the copied line from my credit card statement.

(4)    In testimony, Opposer's owner described an incident involving a vendor from whom Opposer obtained some of its products. "I noticed on that day that when we went to our vendor's website StaubUSA.com and did a store search which shows places to buy their product that they had linked the Cutlery and Beyond logo that they put on their website inadvertently to our website cutleryandmore.com."[24]

(5)    The transcript of an audio recording of a telephone call between a customer and Opposer's customer service personnel,[25] shows the following exchange:

---

[23] Beltrami Dep. Ex. 4, 17 TTABVUE 50-52.

[24] Beltrami Dep. 15:5-20, 17 TTABVUE 18. We give no weight to Mr. Beltrami's characterization of the incident having occurred "inadvertently." Mr. Beltrami's instructions to the vendor to correct the error are at Beltrami Dep. Ex. 5, 17 TTABVUE 53-54.

[25] Beltrami Dep., Ex. 7, 17 TTABVUE 54-56. The audio recording was also played at the deposition and was transcribed by the court reporter.

Opposition No. 91201666

> OPPOSER'S PERSONNEL:  Cutlery and More, this is Amy. How can I help you?
>
> CUSTOMER:  Amy, last night I placed an order through Amazon with you, and I'd like to cancel that order.
>
> OPPOSER'S PERSONNEL:  OK, … The order number?
>
> CUSTOMER:  Ok, it is, um, 1020082891946.
>
> OPPOSER'S PERSONNEL:  Oh, um, that's not… are you trying to call Cutlery and More?
>
> CUSTOMER:  No, Cutlery and Beyond.

(6)   In the transcript of an audio recording of a telephone call between a customer and Opposer's customer service personnel,[26] the customer stated, "I just placed an order through Amazon but through your store."   Following a discussion of the order number, which Opposer's personnel did not recognize, the following dialogue ensued:

> OPPOSER'S PERSONNEL:  "This is Cutlery and More. Did you place the order with us?"
>
> CUSTOMER:  "Oh, I guess I didn't. I have got Cutlery and Beyond. I thought I placed it with you all. …I thought I ordered the Wusthof Gourmet 12 piece knife set with block and I thought it was through you all but I guess it isn't."

The evidence discussed above can be considered without regard to the truth of any assertion made therein, with the exception of the statement in item (6), "I thought I placed it with you all. …I thought I ordered the Wusthof Gourmet 12 piece knife set with block and I thought it was through you all." It is clear from the context that the customer, at that moment, was awakening to the realization of her error. We therefore find that this statement is admissible within the exception for

---

[26] Kohuch Dep., Ex. 10 17 TTABVUE 90-94. The audio recording was also played at the deposition and was transcribed by the court reporter.

Opposition No. 91201666

"[a] statement of the declarant's then-existing state of mind" under Fed. R. Evid. 803(3). The customer's realization of her error follows so immediately upon the state of mind that she describes that her statement should not be disqualified as "a statement of memory." *Id*. However, even if we exclude these statements, the remaining statements, which are not offered for their truth ("I just placed an order … through your store"; "Oh, I guess I didn't.") are admissible evidence of the customer's confusion, as it does not matter which of these inconsistent statements is true.

We find the incidents described above in items (1), (2), (3), (5) and (6) to be probative of actual confusion as to source among the ultimate customers of Applicant and Registrant. The incident described in item (4) is probative of actual confusion within Opposer's trade. Applicant contends that this incident has no probative value because it does not show *consumer* confusion. However, we find that the nature of the confusion shown (*i.e.*, confusion as between the websites of the parties) is relevant to the issue of likelihood of confusion in this case, because both parties provide their retail services through websites, and online contacts with customers are an important factor in the parties' businesses.[27]

Applicant argues that the amount of confusion shown by Opposer is *de minimis*; and argues that so little confusion, over the course of nine years of co-existence in an environment in which "the opportunity for actual confusion to exist … is high," should be taken as "evidence that confusion itself is not likely to occur in

---

[27] We have given no consideration to the incident described in Beltrami Dep. Ex. 6, 17 TTABVUE 55-56.

Opposition No. 91201666

the future…."[28] We are not persuaded to interpret the evidence as Applicant suggests. Section 2(d) does not require a showing of actual confusion, but only likelihood of confusion. In that connection, we have often noted that "[i]n general, evidence of actual confusion is notoriously difficult to come by." *General Mills Inc. v. Fage Dairy Processing Industry SA*, 100 USPQ2d 1584, 1604 (TTAB 2011). Moreover, the Federal Circuit has said that "A showing of actual confusion would of course be highly probative, if not conclusive, of a high likelihood of confusion." *Majestic Distilling Co.*, 65 USPQ2d at 1205. Accordingly, we find that the factor of actual confusion favors a finding of likelihood of confusion.

**F.     Applicant's good faith adoption of its mark.**

Finally, we note Applicant's argument that it "did not set out to register a service mark that is similar to [Opposer's] registered mark" and that "[t]here is no evidence of record of a malicious intent on the part of [Applicant]."[29] Applicant's good faith "does very little to obviate a finding of likelihood of confusion because it is expected that applicants are acting in good faith." *Mag Instrument Inc. v. Brinkmann Corp.*, 96 USPQ2d 1701, 1713 (TTAB 2010). *See also J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991) ("Whether there is evidence of intent to trade on the goodwill of another is a factor to be considered, but the absence of such evidence does not avoid a ruling of likelihood of confusion.") Accordingly, Applicant's good faith is a neutral factor in our analysis.

---

[28] Applicant's brief at 23-24, 24 TTABVUE 29-30.

[29] Applicant's brief at 19, 24 TTABVUE 25.

Opposition No. 91201666

## IV.    **Conclusion**.

We have considered all of the evidence of record relevant to the *du Pont* factors and all arguments of the parties, including those not specifically discussed herein. The parties' services are identical and would travel through the same channels to the same classes of customers. Their marks are similar in structure and meaning. The marks are partly similar in sound, and the differences that have the potential to distinguish the marks are not visually salient. There is no evidence that customers have been exposed to similar marks in use in the marketplace. Finally, there is credible evidence of actual confusion relating to the parties' marks. We therefore find that Applicant's mark so resembles Opposer's registered mark as to be likely to give rise to confusion, mistake or deception as to the source of Applicant's services.  We do not reach Opposer's claims insofar as they are based on Opposer's pleaded common law rights in the mark CUTLERY AND MORE.

**Decision:**    The opposition is sustained.